OPINION OF THE COURT
William D. Friedmann, J.
What is a “butcher store” in the current and commonly accepted use of such term?
Landlord’s holdover summary proceeding to recover possession of premises from tenant puts in issue whether tenant’s admitted sale of “Grocery items”, food and nonfood, represents a material departure from the operation of “a butcher store”, thereby violating the restrictive “use” clause in the lease.
The “use clause” in tenant’s lease provided as follows: “to be used and occupied only for a butcher store”, while the standard Blumberg Improved Gilsey form lease (A 183) contained a nonwaiver clause as to incidents of past performance or observance.
THE FACTS
The facts giving birth to this controversy were either stipulated to or developed through testimony that wasn’t challenged or contradicted. In summary, landlord operates a small grocery store, a few stores away from tenant’s *977 small butcher store on Hollis Avenue, in the Hollis neighborhood of Queens County, New York. For a period of approximately 10 years, tenant has sold some “grocery items” in addition to traditional meat items in its butcher store. Tenant sells lard, margarine, eggs, milk, juice, soda, bread, frozen vegetables, canned goods, rock salt in winter, spaghetti, grits, etc. It does not sell newspapers, cigarettes, beer, fruits, vegetables or other taxable items. Landlord contends that the “grocery items” are sold in direct competition with his store and in violation of the “use clause” in tenant’s lease. Tenant counters by urging upon the court a more expanded meaning of “butcher store”, as well as relying upon the fact that the overwhelming percentage of its sales was of meat items.
The sale of nonmeat items amounts to less than 10% and closer to 5% of tenant’s gross sales. Tenant relies upon the revenue-ratio analysis used by the courts in 30-88 Steinway St. v Bohack Co. (65 Misc 2d 1076).
THE LAW
It is well established that restrictive covenants such as “use clauses” should be construed wherever possible to carry out the intent of the parties, and that such intent should be primarily ascertained from an examination of the lease (Bovin v Galitzka, 250 NY 228, 232, and cases cited therein). Examination of the conclusory term, “a butcher store” involved in this lease, gives little comfort in determining what was the specific intent of the parties with respect to what products could be sold in “a butcher store”. The issue, therefore, requires that the court formulate a definition of what actually is “a butcher store.”
It is well settled that a holdover summary proceeding to recover possession of real property (RPAPL 711) will lie where the use and occupation of leased premises are restricted by express provision to the purpose specified in the lease, and where a material departure from the specified use is held to constitute a violation of the express terms of the lease (30-88 Steinway St. v Bohack Co., supra; Matter of Papson v King Kullen Grocery Co., NYLJ, June 30,1982, p 14, col 2; Nathan’s Famous v Frankorama, Inc., 70 Misc 2d 452; see, also, Rasch, New York Landlord and Tenant, Summary Proceedings [2d ed], § 1007).
*978 In determining whether the use of a premises is restricted by a lease and/or whether any use is such a material departure as would constitute a violation of the terms of the lease, tenant’s store must be viewed in the light of modern stores of the same character, in the same commercial setting (18th Ave. Pharmacy v Wilmant Realty Corp., 95 NYS2d 534; see, also, Rosen v Pustilnik, 204 NYS2d 221; Matter of Papson v King Kullen Grocery Co., supra).
Such analysis must not be made in a sterile setting, but rather, in the frame of current marketing and trade practices. What is a commonly accepted trading label, or descriptive term for a business or retail store varies with the elements of time, location, operation size, merchandise mix, customer service, promotional display space and other criteria. In other words, the customs of almost every trade are constantly undergoing change. For instance, nearly every modern pharmacist would be out of business if his drugstore operation could not sell other goods (18th Ave. Pharmacy v Wilmant Realty Corp., supra, at pp 536-537) and almost every butcher store would be closed if restricted to nothing but the sale of meat.
In the absence of a clear and specific use clause, with itemized “ins” and “outs”, which is the situation herein, the court in searching for a realistic and reasonable meaning of a trading label, “a butcher store”, or descriptive term should consider all relevant factors which would include among others: (1) clarity of the parties’ intentions — negative and positive as expressed in the lease; (2) the date of the lease’s execution; (3) traditional concepts of items or combination of items sold; (4) current marketing customs, including variations of departures from traditional concepts; (5) reasonableness of a use prescription in the context of (a) commercial or competitive location, (b) type or size of operation, (c) an analysis of percentage mix of items sold to ascertain whether a departure is material or de minimis and (d) other concepts such as customer service and facilities offered.
CONCLUSIONS
After applying all of the above criteria to the case at bar, this court must conclude that tenant’s neighborhood busi *979 ness as currently operated cannot be termed “a butcher store” even in the commonly accepted 1982 use of such term.
(A) The “use” clause, though in conclusory terms, is clear and to the point “to be used and occupied only for a butcher store.” (B) The lease is of recent vintage having been executed in 1979. (C) Various “Grocery items”, food and nonfood, which are sold are not organically related to meat and poultry (or even fish) or by tradition related to such business or by custom connected with the preparation of such items. (D) The tenant in its sale of “Grocery items” is in direct and proximate competition with landlord’s store. Both operate small retail stores in the same quiet neighborhood.
In reaching this conclusion, that tenant’s business is not now “a butcher store”, the court is cognizant of the unchallenged testimony of tenant, that, its “Grocery items” represented only 5% to 10% of its over-all gross sales. However, no documentation in support of this testimony was offered.
In arriving at an updated definition of a butcher store, this court concludes that the admitted sale of “Grocery items” not organically or traditionally related to a butcher’s store operation is precluded by the “use” clause of this lease. The scope and variety of “grocery items” sold by respondent cannot be considered a de minimis departure, but rather in the context of competing neighborhood operations a material departure from the lease’s expressed use clause, and therefore, in a violation of said lease.
Respondent’s reliance on the revenue-ratio analysis in Steinway St. v Bohack Co. (supra) is inappropriate when placed in the context of its neighborhood operation. There the trial court was searching for the definition of a “supermarket”. The lease provided that the retail store would be used only as a supermarket. Bohack had sublet the store to a men’s and boys’ clothing retailer. The Appellate Division, in reinstating the Civil Court’s decision (42 AD2d 577, 578), held that the retail store whose sales volume consisted overwhelmingly of what the trade terms soft goods — men’s and boys’ shirts, pants, socks and shoes, and where food items were merely incidental to the main *980 business, may not be termed a supermarket in the commonly accepted use of the word.
In multiproduct operations resembling department stores, reliance upon a sales volume or revenue analysis — sale of food versus nonfood items as the determining criteria may be relevant, as was the floor space ratio analysis used by the court in Papson v King Kullen Grocery Co. (supra), where the installation of a banking facility in a large supermarket was not preliminarily enjoined as being a material departure from the prescribed use. Specifically the court found that the space allocated for banking facility was less than 1/2000 of the store area and generated a comparably small proportion of the store’s revenue.
More relevant in the search for the meaning of “a butcher store” was the small store item analysis in 18th Ave. Pharmacy v Wilmant Realty Corp. (supra, p 537), where the court was “not persuaded that a modern drug store is one for the sale of diamonds, platinum and gold mountings, ladies’ and gentlemen’s mountings and the repair of watches, clocks and jewelry”, and State v Harrington (3 Conn Cir Ct 674), where the court held after a very thorough inventory analysis that a supermarket is not a grocery store as a supermarket sells items other than food items.
Landlord stipulated at the trial that if tenant conformed its operation to the lease terms that its continued tenancy under the lease would be desired. Tenant, therefore, must notify landlord within 15 days of the date of this decision, regarding its desire to conform or not conform its operation to the court’s finding of what is “a butcher store” under the circumstances present here.
In the absence of any specific reference or listing of food products in the lease of a butcher store use clause, “a butcher store” is defined as a place that sells at retail, meat, poultry and their by-products (milk, eggs, butter and lard), including all other items commonly, directly and closely associated with meat and poultry, whether dry, packed, canned or frozen, i.e., seasonings, mustard, ketchup, horseradish, baked beans, sauerkraut, stuffings and coatings. In addition, the following related and convenience items may also be sold: bread, hamburger and *981 frankfurter buns. However, no other food or nonfood grocery items may be sold except upon written consent of the petitioner.
If such a declaration of conformity is made, the tenant shall then have 30 days to bring its inventory into compliance, as well as, within 10 days, to make its rent payments pursuant to the lease for the period of June through August, 1982 (rent/use and occupancy set at $300).
In the event that tenant desires not to conform its operations to the court’s prescription, judgment of immediate possession is granted to landlord together with a money judgment covering the period June through August, 1982, such money payable within 10 days. The warrant of eviction, if any, which shall issue will be stayed for a period of 90 days. During such period of time, tenant’s use and occupancy shall be equal to the rent payable under the terms of the lease or any applicable extension period therein.
In an era of ever changing multipurpose retailing operations, labeled as supermarkets, superettes, discount stores, convenience stores, sales warehouses, mini marts, mall operations, variety stores, etc., it would prove beneficial for the drafters of use clauses in leases to be more precise in their draftsmanship so that descriptive marketing concepts will breathe the air of late 20th century economic realities and practice.